May it please the Court, my name is Kevin Kalbel, this is Lisa Counter, and we represent Dr. Deutschel Kim. Dr. Kim sued ASU for racial discrimination in the promotion review process. The district court granted summary judgment in error, in our opinion, because he had made his prima facie case of discrimination and retaliation, he had direct evidence of racial bias affecting President Crow's ultimate decision. He asked that you reverse summary judgment or amend the case for trial. The district court found that President Crow made an independent determination in terms of promotion, but there was substantial evidence that his decision was affected by the racial animus of the members of the review committee below him. In particular, one of the things that he relied on was the fact that the school committee in 2002 made a recommendation for promotion on a four to three vote, and that was a significant factor for him. And one of the no votes in that case was in that committee was Professor Cameron, who had submitted a declaration that said she voted no because she was intimidated into other people involved in the process who report that Professor Muscatel was motivated by anti-Asian bias. So if he had not been part of the process, she would have voted yes, which would have made the vote that Professor Crow saw a five to two vote, which may have affected his decision since the four to three was an important factor for him. Now, the district judge viewed it as important that when it went through the second time on the re-review, the letter was ostensibly, at least, in favor of promotion to full professor, and that Professor Muscatel seems even to have written the letter in favor of promotion to full professor. How do you respond? That's the argument made by the Board of Regents. That's an argument that seemed to have been persuasive to the district court. Professor Cameron addresses that. Professor Muscatel came to Professor Cameron because he was on the college committee at that time, and it was going to be a two to one vote with him the no vote, and he didn't want the recommendation that went up to Professor Crow to be too favorable, so he switched his vote from no to yes so that he could write the least favorable positive recommendation, and the letter that finally goes up to Professor Crow starts off with four serious concerns that Professor Muscatel has. The first serious concern is the fact that there's nothing in the file after 2000, and because he had improperly participated in the 2000 review, and the CAFT committee says to Professor Kim, we'll give you a re-review, but you don't get to supplement your file. So he brings that to the attention of Professor Crow, knowing full well that it's not Professor Kim's fault, and there's nothing Professor Kim could have done about it. The second concern he raises is that there's no resumes from the external reviewers. Well, that was not a requirement in 2000, that was just a mechanism so they could discount the reviews by the external reviewers, because all the external reviewers gave Professor Kim a positive recommendation for promotion. In fact, on the 2000 review, when those reviews got to the UPTC committee, the university committee, they viewed those external reviewers' recommendations as excellent and strong approval, but those same reviews two years later are now viewed as just, you know, mediocre. And this is supposed to be a process that has objective criteria. So when that evidence goes up, no matter who gets it, every time it goes up, it should be given the same weight. They ever give a reason why they denied the promotion? There are a lot of publications and things like that. He has more publications than I could probably put together in a lifetime. What reason did they give? Professor Crow said he just didn't think, well, specifically he says he didn't have national stature. The criteria at the school level is national or international stature, and that's actually in the university code, and that was the criteria that he was judged on in 2000. Professor Crow changed that in 2002 and said it's not enough to have international stature, you have to have national stature. It's not enough that you're recognized in Korea and China and Asian countries as a scholar. It's no good unless it's American. That's literally what he says. If you're not recognized in... Is it a permissible reason, though? I don't know anything about tenure decisions. It's not a tenure decision. It's a promotion. He wanted to be promoted. I do know something about promotion decisions, but not in the university arena. Is it impermissible for the president of the university to say what's important to me is that a faculty member that I'm being asked to look at for promotion should have a national reputation domestically? I think it is impermissible if it's based on national origin and race. He couldn't say it's important to me to only promote men. Plainly, that would be gender discrimination. So the answer is yes, it would be permissible as long as it's not infected by an impermissible motive. Correct. If the standard was we only want professors who have national stature. What evidence is there in the record that President Crow had suffered from an impermissible bias? Two things. First of all, in a multi-level process, the Ninth Circuit law is if any member of the process has bias, that makes the whole process bad. So was there nothing that the university could have done between 2000 and 2002 to establish a fair re-review process in your view? Yes, there is something they could have done. They could have honored Professor Kim's request not to have Professor Muscatel and Professor Pajaka and Dean Mounier. We knew who the people were who were biased and he asked to exclude them from the process and they wouldn't exclude them. Is that normally done? As I understand it, it's kind of like a vote of a law partnership in the sense that the members of the, in this case, the School of Urban Planning, are voting on whether or not to promote somebody that works with them to a higher level in their school. Is that right? Correct. And that's like law partners deciding whether or not an associate should be promoted to partnership. Correct. Well, it's not exactly like that because there's specific criteria that are set out in the university policy and the CAF committee required them to have detailed qualifications for promotion. So it's not completely subjective. The expectation is if you meet the criteria that the school has established for promotion, that you're going to get promotion. But I guess where my question was leading is that it seems that when, and I'm using my analogy to a partnership, when a partnership decides whether or not to change the partnership by admitting someone else to partnership, all of the people who are going to be affected have a vote. Now, they may be casting their vote for a variety of different reasons, but we don't normally allow the associate, in my hypothetical, to say, well, these two partners shouldn't be allowed to vote on whether or not I should be admitted to partnership because I've had run-ins with them before and we don't get along very well. Correct. But we would allow that associate to sue the partnership if the reason those two partners voted against him was an illegal discriminatory reason. If they said, these partners are voting against me because I'm Asian, that would be illegal. So to go back to my earlier question then, I guess the only way that the university could have done this would have been to sort of root out anybody that Professor Kim identified as potentially having a racial bias and wall those people off from any participation in the review process. That's correct. Actually, you have a minute and 39 seconds. I reserved that for Bob. Listen, I said we're going to be strict about the time, but I want to ask another question and that is, on the due process claim, I'm dubious about the due process claim because I'm not sure that there is an enforceable right. If there is an enforceable right, what is your claim about due process that you have a biased decision-maker or is there something else in the due process claim? The fact that there is discrimination in the process and not an impartial tribunal, that's not only a due process claim, that's in the district, the university's policy for promotion committee is going to be a fair and impartial review. And the second question is, at what point does the university change the criterion from national or international to merely national? I'm not sure that the policy ever actually officially changed. I believe that was just a change that President Crow made on his, that was just his decision. So the inclusion criteria may still contain the criterion of national or international? What's in the record says national or international. I don't know what the actual current policy is. The university may be able to clarify. Thank you. You said he didn't have tenure. You didn't say that. You said it wasn't about tenure. Does he have tenure? Yes, he does. He's a tenured associate professor. I see. Okay. And then I wanted to ask you, did you have any evidence of any comparables, people with similar qualifications who got promoted? Well, we have evidence that Provost Glick had lobbied the director of the school to promote a less qualified white male, and while at the same time voting against Professor Kim. And there's also evidence with respect to Professor Steiner, when he had a chapter of a book translated to Italian, they gave him a wine and cheese party. When Professor Kim's textbook was translated to Chinese, they just dismissed it as, quote, Asian stuff. Thank you. You've run up on a little bit over, but we'll give you a chance to respond. May it please the court, I'm Michael Goodwin on behalf of the defendants, the Arizona Board of Regents, Professor Michael Crow, Dean John Muneer, and Professor Alvin Muscatel. There was no discrimination here. This is a case just about the university's academic judgment about Professor Kim's qualifications. As you know from the record, Professor Kim followed a somewhat unusual career path. He started out as a traditional academic. He was tenured in the 1980s. He promoted from associate professor to, from assistant professor to associate professor. And in 1990, he went to the president's office, where he worked on special projects. And his, from that point on, he was a part-time teacher, a part-time researcher, and he did a lot of administrative work, did a lot of research. What was your nondiscriminatory reason? Well, the nondiscriminatory reason was that he had not demonstrated sufficient proof of excellence in particularly research and teaching. His, his, no one had any concerns about his work, his service. That's one of the three criteria. He had, he had a lot of service, but, but particularly in research, his, his productivity as a scholar was deemed lacking. And so, in the words of Professor Crow, he was not there yet, in terms of... He wrote a book. He co-authored a book in the 19, it was published in 1997. But one of the interesting things, if you look at the, at the, at the recommendations that were made pro and con for him, there's not much difference. Even the, even those who supported Professor Kim's application for promotion were underwhelmed by his productivity. And it was noted that after 1990, when he left his, his academic post for an administrative post, his, his, his record of publications was, was not great. One of the things we looked for, the court said, is violations of your own regulations. And reading through the record, it seems there were numerous violations of your own regulations, one of them being that people who were on sabbatical were brought back to vote, when that was against the, the regulations. Is that correct? That is not correct, Judge Bertelsman. That, that would be correct if you were talking about the 2000 application. Professor Crow, excuse me, Professor Kim applied for promotion in 2000, and, and, and he was denied promotion, and then he filed a grievance. And so, and as a result of the grievance, the 2000 process was scrapped, and, and an entirely new re-review was undertaken. And I don't believe there's anything of that nature that occurred in, in 2000. Isn't the law that's on there somewhere, maybe it's Ninth Circuit law, that the, that problem, problems that indicate discrimination at any stage can be considered throughout. Isn't, didn't I see that in there somewhere? Well, the, the plaintiff makes that argument and puts a lot of emphasis on this case, Lamb v. Hawaii. Well, I guess what I would say to your point, first of all, there's no discrimination at any stage, and secondly, Well, there's inconsistencies in that you, these people that are on sabbatical are brought back to vote against him in violation of your own regulations. That's one of the things you look for, for inconsistencies in the non-discriminatory reason, or one of the reasons the non-discriminatory reason can be rejected. But, but So, so you say, oh, that was just the early part. So, but I thought there was a Ninth Circuit case cited in here that said any part would be, in academic, in academic matters can be considered. But, but the participation, the alleged improper participation of people on sabbatical was in the 2000 process. And what we're talking about here, what this case is really about, is the 2002 re-review. And on that point about the improper participation, it should be noted, and this was in the, in the finding of the grievance committee, was that the school had approved the participation. The, the, the evidence on that is that the, the director of the school, which is like the department chairman, thought that with so many people, it's a small department, and with a number of senior faculty on, on sabbatical leave at the time, that they wouldn't have enough to get a good vote. And so the rules were changed to permit, to obtain the participation of everybody in the department. But they weren't changed far enough in advance of the, of the school personnel committee's deliberations, and therefore the amendment of their bylaws was, was deemed ineffective. But there was some support for that. But that, again, that happened in 2000. Weren't the same people involved in the second part of the vote? No, they were not. How about Professor Muscatel? Were they involved in both of them? Professor Muscatel was. Yeah, well, he's a, he's a person. Yes. So some of the same people were involved in, in both stages. Yes. The Plaintiffs' Council had pointed out, or was complaining about the participation of people that were allegedly biased. He mentioned, in particular, Dean Muneer. Muneer had no role whatsoever in the 2002 re-review. That's when the decision was made to deny Professor Kim's application for tenure. So, so Muneer was not involved in that. He mentioned Professor Piakka. Piakka was a favorable vote. Piakka recommended Professor Kim for promotion. So there's no discrimination in that. At what point did Professor Piakka recommend in favor of promotion? Professor Piakka was a member of the school personnel committee, the very first level of review. And the vote, initially Professor Piakka was against promotion. And Professor Piakka spoke with the school director to obtain some clarification about Professor Kim's publications to find out if some of the journals that published Professor Kim were top-tier journals. And he came back satisfied that Professor Kim had published in some top-tier journals, and he changed his vote from unfavorable to favorable. And so that – Can you clarify whether the criterion about stature or recognition was ever formally changed? I know what I saw on the record, the criterion with respect to recognition, is national or international. Has that ever formally been changed? Yes, Your Honor. Is it only national? I believe it is. You believe it is? I want more than belief. I want, is it in the record? That's hard to answer. Here's what I can tell you is that one of the issues in the 2000 review was whether the criteria were sufficiently clear. And so before the re-review was undertaken, the provost instructed the department to go back and clarify what the criteria are. And so in the record, it's Exhibit 20. I want to say it's Document 61, Exhibit 20. But anyway, it's Exhibit 20, and there is a document in there that lists the criteria. And I think that's what the court was referring to, national or international. And my question for you, has that criterion of national or international ever changed? The record doesn't disclose that that was formally adopted. So all I can tell you is I believe that was the case. You say that and that. What do you mean by that? What was the case? Excuse me, that the criteria set forth in that Exhibit 20 that says, Criteria for Promotion to Full Professor, it doesn't indicate where that was formally adopted. So there's no record evidence of that, but I believe that it was. Now, again, you're saying that. That exhibit, Exhibit 20. No, let me make sure. I'm asking you, was the criterion about stature and recognition ever changed from national or international to simply national? And I have not got an answer that I understand yet. I apologize for that. I don't believe that it was changed. Okay. That's fine. Okay. As far as I'm concerned, as far as the record indicates, the main change from the time President Crowe became president of the university was that he himself took part in the or made the final decision. He was the ultimate decision maker. Time is running, so I've got to ask one last question. Participating in a decision is somewhat different from being on a committee. And given the obvious attitude of Professor Muscatel toward the promotion to a full professor for Professor Kim, it's pretty clear that putting him on that committee for the re-review was loading the dice against him. That is to say, you could have kept him on the faculty. You could have had him have whatever vote any ordinary faculty member has. But putting him on that committee for the re-review strikes me as very self-consciously putting a hostile person on that committee. Am I misunderstanding the record? I would disagree with that. First of all, he was chosen by the members of the college, not just his department. He was chosen to the college personnel committee. And as you pointed out before, he voted favorably in the re-review. He voted for Professor Kim's promotion, albeit with reservations. But his view was exactly the view of the other two members of the college committee. And was he, as I read the record, it appears that he was primarily responsible for the drafting of the letter on the re-review. Is that correct? Well, there's conflicting evidence on that point. The one affidavit from a member of the committee, not Professor Muscatel, said he didn't remember. And the other evidence about who wrote the letter was hearsay. But in any event, the other two people weren't obligated to sign on to the letter, regardless of who wrote it. Okay.  Thank you very much. Would you like a minute? You asked how Professor Muscatel got into the 2002 re-review. Professor Dandekar was slated to be the representative on the college committee at that time. He volunteered to be in the committee when he found out Professor Kim was coming up for promotion. That's how Professor Muscatel insinuated himself back into the 2002 review. Professor Muscatel volunteered? Correct. What I hear my colleague talking about is, was Professor Kim qualified? Was he a prolific researcher? Was there discrimination? All these are questions of fact. This is summary judgment. If there's questions of fact out there, summary judgment shouldn't have been granted. The school approved him for promotion. The school's director approved him for promotion.  The dean of the college approved him for promotion. Professor Crow gave him a thumbs down, and that's where the process went awry. Thank you. I thank both of you for your helpful arguments. The case of Kim v. Arizona Board of Regents is now submitted for discussion.
judges: Fletcher, Tallman, Bertelsman